## McMULLEN v. UNITED STATES.
### No. 6732.

United States Court of Appeals for the District of Columbia.

Reargued Jan. 10, 1938.
Decided March 21, 1938.

William E. Leahy and William J. Hughes, Jr., both of Washington, D. C., for appellant.

Leslie C. Garnett, U. S. Atty., and David A. Pine and John J. Wilson, Asst. U. S. Attys., all of Washington, D. C.

Before GRONER, Chief Justice, and STEPHENS and MILLER, Associate Justices.

GRONER, C. J.

Appellant was convicted under an indictment charging him with a violation of section 1782, R.S., Cr.Code § 113, section 203, title 18 U.S.C., 18 U.S.C.A. § 203,[1] and was sentenced to serve a jail term of six months and to pay a fine of $1,000. There are 26 assignments of error, but on this appeal we need notice only the third.

A short statement of the facts is necessary. Appellant at the time in question was a colonel in the United States Army attached to the Judge Advocate General's department. He had been in bad health for several years and was apparently detached and inactive in 1932 and had established an association with a firm of lawyers in the city of Washington. In April of that year the Cuban-American Manganese Corporation learned that the revenue bill then in preparation by Congress contained, or would likely contain, a provision for an excise tax of 1 cent a pound on the importation of manganese ore into the United States. At that time the Platt Amendment to the Commercial Convention with Cuba Dec. 11, 1902, 33 Stat. 2136, authorized the admission of manganese ore free of duty. The manganese company wanted to prevent the abrogation of the Amendment and the levying of a tax on its imported ore, and one of its officers, Mr. Williams, visited Washington with that end in view. He consulted appellant, believing that he was not then connected with the army, explained the reason for his interest in the legislation, and asked if appellant could help him. Appellant said he would be glad to do what he could, and later during an interview in his office appellant telephoned Secretary of Commerce Lamont, Assistant Secretary of State Bundy, Colonel McFarland of the War Department, and arranged that Mr. Williams would visit these officers of government and present his views to them—it being thought that the various departments represented by the persons mentioned would be interested in the subject either from the treaty point of view or because of its bearing upon the national defense. One of appellant's associates in the law office went with Williams, who saw some or all of the officials concerned and explained the bill and its provisions and tried to interest them in taking action looking to the defeat of the objectionable provision. At the conclusion of the interview with Williams, appellant was asked by him to follow up the matter, and some correspondence thereafter ensued. In a letter dated in April, 1932, appellant advised Williams that the Assistant Secretary of War had appeared before the Senate finance committee and at appellant's suggestion had stressed the importance of the Cuban manganese situation with respect to national defense. Appellant appears also to have furnished letters of introduction to Senator Hull and to have written a number of letters indicating that he was keeping in touch with the congressional situation and would see "distinguished Senators on the subject" and report the outcome.

The proposed change in the revenue bill was rejected in Congress, and the bill without the tax was approved by the President on June 6, 1932.

Apparently nothing was said of compensation at the first meeting between Williams and appellant, but subsequently in May or June appellant and the company agreed on the sum of $1,000 plus a monthly retainer of $250 as of May 1, 1932, to continue for the balance of the calendar year, and on July 5, 1932, Williams wrote appellant as follows:

"Dear Colonel McMullen:

"I am sorry that I have been delayed in writing to confirm the arrangement which Mr. Lindley C. Morton made for us with you. It is my understanding that you

---

[1] "§ 203 (Criminal Code, section 113.) * * * Whoever, being elected or appointed a Senator, Member of or Delegate to Congress, or a Resident Commissioner, shall, after his election or appointment and either before or after he has qualified, and during his continuance in office, or being the head of a department, or other officer or clerk in the employ of the United States, shall, directly or indirectly, receive, or agree to receive, any compensation whatever for any services rendered or to be rendered to any person, either by himself or another, in relation to any proceeding, contract, claim, controversy, charge, accusation, arrest, or other matter or thing in which the United States is a party or directly or indirectly interested, before any department, court-martial, bureau, officer, or any civil, military, or naval commission whatever, shall be fined not more than $10,000 and imprisoned not more than two years; and shall moreover, thereafter be incapable of holding any office of honor, trust, or profit under the Government of the United States. (R.S. § 1782; Mar. 4, 1909, c. 321, § 113, 35 Stat. 1109.)"

will represent our interests in Washington for the balance of this calendar year. We are to pay you a fee of $1,000 and in addition $250 per month. This arrangement is to be considered effective as of May 1st, 1932, and I accordingly take pleasure in enclosing herewith our check for $1,500 representing the $1,000 fee and the monthly payments for May and June.

"If the arrangement which I have outlined above does not correctly express the understanding reached between you and Mr. Morton, I should be obliged if you would let me know."

The indictment was returned June 5, 1935, and in the fore part describes the course and purpose of the proposed legislation in Congress, and then charges as follows:

"That one Joseph I. McMullen, late of the District of Columbia aforesaid, on to wit, the said sixth day of July, 1932, he the said Joseph I. McMullen, being then and there an officer in the employ of the United States, that is to say, a colonel in the United States Army assigned to the Office of Judge Advocate General of the United States Army in the War Department, well knowing all the premises hereinbefore alleged, unlawfully, feloniously, knowingly and wilfully did receive at the District of Columbia aforesaid, compensation in the sum of fifteen hundred dollars, that is to say, a bank check bearing date July 5, 1932, bearing check number N344, being in the sum of fifteen hundred dollars, payable to the order of the said Joseph I. McMullen, under the name Colonel Joseph I. McMullen, and bearing the name as maker of Cuban-American Manganese Corporation, and bearing the signatures of the President and the Treasurer of said Corporation, and drawn upon the Grand Central Branch of The Chase National Bank, in the City of New York, in the State of New York, which bank check was of the value of, to wit, fifteen hundred dollars, and which compensation he, the said Joseph I. McMullen, did receive at the time and place aforesaid, for services rendered and to be rendered by him, the said Joseph I. McMullen, to the Cuban-American Manganese Corporation, a body corporate, in relation to the matter of the proposed legislation aforesaid before a certain department of the United States, that is to say, the War Department of the United States, and before certain officers of the United States, that is to say, certain United States Senators; against the form of the statute in such case made and provided, and against the peace and government of the said United States."

Appellant filed a motion to quash; a demurrer; a motion for bill of particulars; a plea in bar of immunity; a plea in bar of former jeopardy; all of which were overruled and exceptions saved. At the close of the government's case appellant moved for a directed verdict which was denied, and at the end of the trial renewed the motion with like result; and afterwards moved in arrest of judgment.

On this appeal, as he did below, appellant insists that the evidence shows the offense, if any, was in New York City and not in the District of Columbia. The basis of this contention is that the check was paid and the money received by appellant's agent (the collecting bank) in New York City, and this being so, that there is no venue in the District of Columbia. Counsel for the government say that, in preparing the indictment, they anticipated that if they laid the venue (brought the prosecution) in New York appellant would insist that the proper venue was in the District of Columbia, and "in order not to be placed in this legal strait-jacket," they prepared the indictment to charge not that the appellant received money as compensation, but that he received a bank check of the value of $1,500 as compensation. And on this theory they assert venue in the District of Columbia. Enough has been said, we think, to show that, if the trial was conducted by the parties along the lines they have argued in this court, as apparently it was, it proceeded upon two wholly different and inconsistent theories of the nature of the offense charged.

The trial occurred April 28, 1936. Approximately five months before the trial appellant filed a motion for a bill of particulars, as follows:

"As to the allegation that the defendant received in the District of Columbia compensation in the sum of $1,500.00 i. e., a bank check dated July 5, 1932, drawn upon the Chase National Bank in the City of New York, which compensation the defendant 'did receive at the time and place aforesaid.' Defendant moves with respect to this allegation that the prosecution supply it with definite information:

"(a) As to where the said bank check was paid to defendant, whether in New York City or in Washington, D. C.

"(b) Whether the allegation that the defendant did receive 'at the time and place aforesaid' refers to New York City or Washington, D. C.

"(c) If it be claimed that defendant received the compensation in Washington, D. C., in the manner aforesaid, in what way or through whom did the defendant receive it in Washington, D. C.?

The court, as we have seen, refused to order the particulars to be furnished, and this is assigned as the third ground of error. On the trial the government proved the receipt through the mails by appellant, of the $1,500 check drawn on a New York bank, its deposit to his personal account in a local bank, and its payment in due course; and this, the government now says, is sufficient under the indictment to show the receipt of compensation in the District of Columbia in the form of "a thing of value," i. e., a check for $1,500. What, if anything, to this effect it said below, does not appear. Appellant on the other hand, relying upon the contract contained on the deposit slip used by him in the deposit of the check—which, in the usual form, provided that the bank should act as agent of the depositor for collection and receive the check for deposit at the depositor's risk, etc.[2]—together with proof that the check was paid to appellant's agent in New York City, insisted below and insists here that the trial court should have instructed a verdict in his behalf for lack of proper venue.

To decide now whether the court below was in error in refusing the bill of particulars, we must have recourse to the indictment itself. It says: "the said Jo-

seph I. McMullen, being then and there an officer in the employ of the United States * * * did receive at the District of Columbia aforesaid, compensation in the sum of fifteen hundred dollars, that is to say, a bank check bearing date July 5, 1932, * * * being in the sum of fifteen hundred dollars, payable to the order of the said Joseph I. McMullen, * * * which bank check was of the value of, to wit, fifteen hundred dollars, and which compensation he, the said Joseph I. McMullen, did receive at the time and place aforesaid, for services rendered and to be rendered by him. * * *"

The first question, then, is: Does the wording of the indictment clearly sustain the government's present view? To say, as the indictment does say, that McMullen received "compensation in the sum of fifteen hundred dollars" is to speak in terms of money, for the word "sum" has a definite meaning appropriate to use in reference to dollars and cents, and is restricted in its application to money except where a different meaning plainly appears. Kelley v. Sullivan, 201 Mass. 34, 87 N.E. 72, 73; United States v. Van Auken, 96 U.S. 366, 368, 24 L.Ed. 852; Wetz v. Elliott, 4 Okl. 618, 51 P. 657; Lynes v. Townsend, 33 N. Y. 558; Donovan v. Jenkins, 52 Mont. 124, 155 P. 972. As defined in Webster's New International Dictionary the word sum means, in the only sense in which it can be applied here, a total or aggregate of things, or a quantity of money. If appellant had received a number of checks it might be said that he received the sum of so many checks. But we think it is not permissible to say he received the sum of one check. And thus we are left with the only other

[2] In making deposits the depositor agrees with the Liberty National Bank of Washington, D. C., that credit allowed for items on this or any other bank or party is only provisional and until the proceeds thereof, in money, are actually received by this bank or items found good at the close of business of the day on which they are deposited such items may be charged back to the depositor's account regardless of whether or not the item itself can be returned; that said bank may decline payment of any check drawn on such deposits until the items of this deposit, though credited, are actually paid in money; that any failure to enforce these rights by the bank shall not be construed a waiver thereof; that items received for deposit or collection are so received at depositor's risk, may

be transmitted in the usual manner for collection, either to the bank or person on which they are drawn, or to such bank or persons as said bank shall deem reliable; that all such direct or indirect collecting agencies shall be deemed agents of the depositor; that for the negligence, actions, omissions, or failure of such collecting agents, or for loss of item in transit, or any cause, no liability shall attach to the said bank; that said bank or any collecting agent may receive payment of all or any such items in cash, by check or draft, and shall not nor shall any collecting agent be liable for the dishonor of such checks or drafts or losses thereon or for the negligence, default or failure of another; that items may be collected through the Federal Reserve Banks in accordance with their rules.

meaning of the word, that is to say, quantity of money. If we substitute that phrase, the indictment charges that appellant did receive at the District of Columbia compensation in the quantity of money of $1,500—which is what the government now argues it did not charge. The language which follows—that is to say, 'a bank check * * * being in the sum of fifteen hundred dollars * * * which bank check was of the value of * * * fifteen hundred dollars,"—if intended to explain how money was received in the District, in view of the preceding language that money was received, is, to say the least, awkwardly phrased; and it is contradictory if it was intended to explain that not money but a check was the compensation. And when to this is added the further language—and , which compensation he, the said Joseph I. McMullen, did receive at the time and place aforesaid—the contradiction is intensified, for the words "which compensation" when read grammatically doubtless refer to the bank check of $1,500. From all this it is apparent that two wholly inconsistent views of the indictment may be taken, and in this court they are insisted on with great earnestness.

If the government was in doubt, as it now appears, whether to charge the receipt of money or the receipt of a thing of value, like a horse, it could easily have brought the indictment in two counts, one charging receipt of compensation in the form of a paper writing of the value of $1,500, to wit, a check, and the other charging the receipt of compensation in money. This is what was done in Egan v. United States, 52 App.D.C. 384, 287 F. 958. But the government says that the distinction which it now insists upon "appellant has failed to grasp." The failure to grasp it, we think, is understandable for, in addition to the fact the indictment does charge the receipt of money, the government at the trial, instead of merely proving the receipt of the check in Washington—which might have been enough under its present theory, although cf. McDonald v. Chemical National Bank, 174 U.S. 610, 620, 19 S.Ct. 787, 43 L.Ed. 1106—undertook to show that, because the bank had permitted appellant to draw on the deposit to the extent of $70 before the receipt of the money by the collecting bank in New York, the bank had thereby waived the contract between appellant and itself. Certainly it may not be contended that proof of that sort was necessary if

the theory of the case had been merely that the receipt of the check as a thing of value, without regard to anything else, was sufficient; for the questions of law under the two theories are wholly different. Of course it was proper for the government not only to prove its theory of the case but to refute also any other possible theory, but after all it is essential that what the government conceives to be the true theory clearly appear. Any other course would be manifestly unfair.

Nor is this all. When the trial judge came to charge the jury on this phase of the case, he said:

"The Court further instructs you that the payment by check sent from New York to . Washington by this Cuban-American Manganese Corporation to the defendant and the depositing by the defendant of that check in the bank in the District of Columbia, where the check was paid, would constitute payment in the District of Columbia."

Counsel, in objecting to this statement, paraphrased the court's language as follows:

" * * * your Honor, stated a payment by check sent from New York to Washington and deposited here constituted a payment in Washington."

The court then said:

"I will just add to my charge that in regard to the payment in the District of Columbia, where payment is made by check sent from New York to a defendant in the District of Columbia and the check was disposed of as it was, as the facts in the case disclosed, that is, deposited and collected, that constitutes a payment in the District of Columbia."

We look in vain for any clear indication in this charge that the court had in mind the government's present theory of the case or that, if he did, the words he used might reasonably be said to have conveyed that idea to the jury. His reference to the deposit of the check and collection of the proceeds appears to us much more nearly directed to appellant's theory than to the government's theory. Certainly there is nothing in the language which may be said to suggest to the jury the one rule or the other which they should apply in determining the receipt of compensation. And so we are brought to feel—

First, that for the reasons we have stated the indictment is so vague, uncertain, and duplicitous in its terms as to make it

peculiarly responsive to a bill of particulars explanatory of the charge on which it was proposed to try the accused;

Second, that government counsel on the trial recognized the fact that neither theory was as clearly expressed as to be the only possible one presented and in the proof undertook to sustain either one of the two distinct theories of the case, each requiring different and distinct proof;

Third, that appellant's defense on this phase of the case was and still is that the check was collected in New York and compensation in money received there and not in the District of Columbia, a wholly different and distinct case from that which the government now seeks to sustain; and

Fourth, that the instruction of the court to the jury on this vital subject was so phrased as to leave the jury in doubt, as we are left in doubt, whether he meant that the evidence was to be considered in the light of a charge that the accused received "a thing of value" in the District of Columbia or of a charge that accused received $1,500 in money through the deposit of a check in the local bank.

In the circumstances we have shown a motion for a bill of particulars is always regarded as the appropriate remedy to secure a more specific statement of the facts and to prevent surprise by the production of evidence which the accused is unprepared to meet. Equally in such circumstances its refusal is error. Lett v. United States, 8 Cir., 15 F.2d 686; Billingsley v. United States, 8 Cir., 16 F.2d 754; Reimer-Gross Co. v. United States, 6 Cir., 20 F.2d 36; Williams v. United States, 6 Cir., 3 F.2d 933; Newton Tea & Spice Co. v. United States, 6 Cir., 288 F. 475, 478; Rudner v. United States, 6 Cir., 281 F. 516, 518; Wilson v. United States, 2 Cir., 275 F. 307; Morris v. United States, 8 Cir., 161 F. 672, 681; Rinker v. United States, 8 Cir., 151 F. 755; State v. Davis, State v. Quigg, 39 R. I. 276, 286, 97 A. 818, Ann.Cas.1918C, 563. In reaching our conclusion we are not unmindful that ordinarily a motion for a bill of particulars is addressed to the sound discretion of the court and that this discretion we should not review except where manifest prejudice has resulted. The trial below as we think, as amply shown by the record, contains manifest evidences of general bewilderment in its objective, and in these circumstances we feel that it would be improper to affirm the verdict of guilty; for, as Judge Crane said in People v. Zam-

bounis, 251 N.Y. at page 94, 167 N.E. 183, 184:

"Forms and procedure still have their place and purpose in the administration of the law; without them we would have chaos. Much impatience is being shown with the technicalities of the law, and at times it is justified. The requirement that an indictment and an information must state the crime with which a defendant is charged, and the particular acts constituting that crime is more than a technicality; it is a fundamental, a basic principle of justice and fair dealing, as well as a rule of law."

Reversed and remanded for a new trial in accordance with this opinion.