**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James E. MOORE, Jr.,
Defendant-Appellant.**

No. 84–2354.

United States Court of Appeals,
Seventh Circuit.

Argued April 10, 1985.

Decided June 12, 1985.

___

Robert H. Rice, Belleville, Ill., for defendant-appellant.

Robert T. Coleman, Asst. U.S. Atty., Frederick J. Hess, U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before WOOD and COFFEY, Circuit Judges, and PECK, Senior Circuit Judge.*

JOHN W. PECK, Senior Circuit Judge.

This is an appeal from the conviction of appellant James Moore for violation of 18 U.S.C. § 1001 and 18 U.S.C. § 371. Moore argues that there was insufficient evidence on which the jury could have based its guilty verdict. For the reasons set forth below, we affirm.

The evidence presented at trial established that Moore was president and majority shareholder of Security Bank and Trust ("Security") of Cairo, Illinois and that Richard Keene was vice-president. The loan division of Security consisted only of Moore, his nephew, and Keene. Moore was also majority shareholder of National Finance Company in Sikeston, Missouri. National had only three employees—Moore, Keene and Glenda Tumbleson, a clerical worker. During the time period in question, Loman Garner was one of the largest borrowers from National. Also during the relevant time period, Garner's loan payments to National were past due and he had past due notes with Security as well.

Security participated in a loan guarantee program under the auspices of the Farmers Home Administration ("FHA"), an agency of the Department of Agriculture. In October 1978, Security submitted a preapplication letter for a loan guarantee to the FHA, with Garner as the proposed borrower. The letter, signed by Moore, stated that the loan funds would be used for the purchase of machinery, equipment and fixtures, inventory, and as working capital for Garner Building Truss, Inc., d/b/a Sikeston Truss Company, which was owned by Garner. The letter was followed by a formal loan guarantee application signed by Moore and Keene which stated that the loan proceeds were to be used as described in the preapplication letter, and further stated that Garner's payment record and management ability were excellent. The application was followed by a conditional commitment of guarantee signed by the FHA director for the State of Illinois. The conditional commitment provided that of the $400,000.00 loaned, $250,000.00 would be used to purchase machinery and equipment and $150,000.00 would be used for working capital. On March 6, 1979, Moore and Garner signed the conditional commitment. Finally, on March 28, 1979, a lenders agreement was signed between the FHA and Security (signed by Keene) which stated that the loan funds would be used in accordance with the terms of the conditional commitment. The loan guarantee was issued on March 30, 1979.

The first installment of loan funds, $250,000.00, was deposited in Garner's personal account with Security on February 21, 1979. Immediately, Garner's account was debited $77,213.63 to pay off three of his preexisting notes at Security. On February 23, 1979, Garner used $30,000.00 of the guaranteed loan proceeds to repay preexisting loans at other institutions.

On March 30, 1979, the remaining portion of the $400,000.00 loan funds was placed in Garner's "Sikeston Truss Account" at Security. From April to November 1979, $29,086.86 was transferred to Garner's personal account to cover overdrafts. In addition $11,894.88 of the guaranteed loan funds was used to pay preexisting notes which Garner had with National. In August 1979, Garner sent a memo to Security giving permission to debit the Sikeston Truss Account $1,486.86 each month for

* Hon. John W. Peck of the Sixth Circuit, sitting by designation.

payment on preexisting notes with National. The memo was initialed by Moore.

In September 1979, an application for a second loan guarantee, signed by Moore for National and by Garner on behalf of Garner Building Truss, Inc., was forwarded to the FHA. The requested purpose for the $200,000.00 loan was working capital. The same procedure as that followed in obtaining the prior loan guarantee was utilized, i.e., a conditional commitment, loan agreement and lenders agreement were executed. The loan agreement, signed by Moore, represented that Garner's management skills, payment record and method of handling financial matters had been sound. At the time of the second application, the $150,000.00 note and the $250,000.00 note for the first guaranteed loans were past due. The $200,000.00 in guaranteed loan funds was distributed on November 6, 1979; on January 29, 1980, the FHA issued a loan note guarantee for the funds. Instead of being used as working capital for the truss company, $82,515.96 of the guaranteed loan funds was used for repayment of an $81,500.00 loan which Security had made to Garner in November 1979.

In August 1980, Moore and Garner applied for an additional $300,000.00 in loan guarantees. That application, signed by Moore, represented that Garner had not been the subject of any regulatory examination report. In fact, Garner's loans had been classified in a Federal Deposit Insurance Corporation Report of Examination in April 1980, and Security had been told to write off a portion of the loans.

Moore, Keene and Garner were indicted in September 1983 and charged with conspiring to defraud the United States in violation of 18 U.S.C. § 371 and with violation of 18 U.S.C. § 1001. The eleven-count indictment charged Moore, Keene and Garner with conspiring to defraud the United States and to knowingly make and use false documents to obtain the use of United States currency while fraudulently shifting the risk of loss for such use to the United States. The indictment further charged the defendants with wilfully and knowingly concealing, and covering up a trick, scheme and device, material facts within the jurisdiction of the Department of Agriculture in applications and documentation for loan guarantees pursuant to the Business and Industrial Loan Guarantee Program in violation of 18 U.S.C. § 1001. Moore, Keene and Garner were tried by a jury. Moore was found guilty of conspiracy in violation of 18 U.S.C. § 371 and of five counts of violating 18 U.S.C. § 1001. Keene and Garner were also convicted on several counts, but do not appeal their convictions.

Moore raises the issue of the sufficiency of the evidence used to convict him. He advances the argument that the evidence is insufficient to show that he performed any of the illegal acts knowingly and wilfully.

When confronted with a claim of insufficient evidence to sustain a conviction, we must review the evidence and all reasonable inferences which can be drawn from it in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Redwine*, 715 F.2d 315 (7th Cir.1983). The court in *Redwine* summarized:

> The appellant mounting an evidentiary sufficiency challenge bears a "heavy burden." *United States v. Garcia*, 562 F.2d 411, 414 (7th Cir.1977), and thus "[o]nly when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." *Brandom v. United States*, 431 F.2d 1391, 1400 (7th Cir.1970), *cert. denied*, 400 U.S. 1022, 91 S.Ct. 586, 27 L.Ed.2d 634 (1971). Moreover, it is not for this court to reconsider questions of the weight of the evidence or credibility of witnesses, *Glasser*, 315 U.S. at 80, 62 S.Ct. at 469.

Moore argues that the evidence established that Keene was in charge of commercial loans at Security and was also responsible for the FHA loans, and that Moore relied upon Keene to handle these matters. Although he concedes that he signed the documents and forms in ques-

tion, Moore states that Keene actually prepared all documents and forms. Moore also cites the testimony of Glenda Tumbleson, the clerical worker at National, that although he was at National almost every day he actually performed no work for National; rather, Keene was responsible for handling loans. Moore concludes that the evidence establishes that his involvement with the guaranteed loans was peripheral, and that Keene, as the major actor throughout these transactions, led Moore to believe that all handling of the Garner accounts was valid.

Reviewing the evidence under the principles of *Glasser* and *Redwine*, we hold that the evidence is sufficient to support Moore's conviction of both the conspiracy and the substantive crimes. Moore was majority shareholder of both National and Security; neither institution was very large, and Garner had substantial loans at both. Moore signed almost all of the loan guarantee applications, conditional commitments, loan agreements and lenders agreements. A condition repeatedly set forth in the documents was the proviso that the guaranteed loan funds were to be used for machinery and equipment, inventory and working capital of the Sikeston Truss Company. A substantial amount of the funds, however, was used to pay off Garner's preexisting debts to National and Security. Employees of Security Bank testified that Moore ordered them to debit the Sikeston Truss Company account on several occasions and to write checks payable to National. In fact, Moore initialed a letter from Garner approving a $1,486.86 monthly payment from the Sikeston Truss Account to National. Considering the small size of both National and Security, the magnitude of Garner's financial obligations to both institutions, Moore's signature on most of the documents and forms, and his involvement in debiting the Sikeston Truss Account and Garner's personal account, a jury could reasonably conclude beyond a reasonable doubt that Moore knowingly and wilfully participated in the crimes for which he was found guilty.

Accordingly, the conviction is affirmed.