**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William MOSLEY, Defendant-Appellant.**

No. 84–2228.

United States Court of Appeals, Seventh Circuit.

Argued June 12, 1985.

Decided March 26, 1986.

---

---

Jimmylee Gray, Detroit, Mich., for defendant-appellant.

Patrick E. Ready, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before BAUER and FLAUM, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

Defendant-Appellant challenges his conviction, after a bench trial on stipulated facts, for two counts involving a conspiracy to commit fraud against a federally funded youth program. An indictment charged defendant-appellant and co-defendant, Brantley, who was tried separately by a jury and whose appeal, No. 84–2131, was heard on the same day as the instant appeal, with one count of conspiring to commit fraud against the United States, in violation of 18 U.S.C. § 371, and one count of transporting a fraudulently obtained security in interstate commerce, in violation of 18 U.S.C. § 2314. The indictment also charged Brantley separately with four unrelated counts. We affirm the conviction.

### Facts

Before trial to the bench, the parties stipulated to the facts. The stipulated facts and exhibits reveal the following:

Co-defendant, Brantley, and two other individuals founded a community youth organization in Chicago known as Afro Youth Community [hereinafter referred to as AYC]. Brantley and his co-founders designed AYC to provide programs for disadvantaged youth.

After AYC received funding from the Illinois Department of Children and Family Services in April 1976, Brantley became AYC's President and Executive Director.

Brantley's friend, defendant-appellant, Mosley, a Detroit attorney, became the Chairman of AYC's Board. Mosley also owned the property that AYC rented.

AYC purchased furniture on credit from Wieboldt's Department Store, a Chicago retailer. After the Department of Children and Family Services told Brantley that they would not pay outright for the AYC furniture purchased from Wieboldt's, except on a yearly pro-rated basis, Brantley and Mosley raised the alternative of leasing AYC's furniture with the other AYC Board members. Mosley indicated that he would investigate various leasing firms and find a suitable candidate.

A short time later, Mosley and Brantley stated that AYC would lease its furniture from National Furniture and Equipment Leasing Company [hereinafter referred to as National Furniture]. As part of the agreement, National Furniture purchased all of AYC's furniture and equipment and leased it back to AYC. In addition, National Furniture reimbursed AYC for payments that AYC was making to Wieboldt's Department Store for the furniture and to the Hyde Park Bank for an automobile loan.

Unknown to the AYC Board, Mosley had created National Furniture in July 1977 when he traveled to the home of his aunt, Ruby Alexander, in Collierville, Tennessee. Mosley drafted the legal documents for the business giving Alexander's farm as the business address. National Furniture's articles of incorporation stated that Mosley was the President, Alexander was the Vice President, and Scott, Mosley's sister and a Detroit resident, was the Secretary and Treasurer. The Articles listed Newborn, Mosley's grandfather and owner of the Collierville farm, as an incorporator. Alexander's farm contained no National Furniture office, warehouse, store or inventory of furniture.

Mosley opened a business checking account at a Collierville bank listing Alexan-

---

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

der and himself as the authorized signators. The bank sent National Furniture's account statements to Alexander and to Mosley's law office in Detroit. All the money in the National Furniture account came from AYC. Mosley told Alexander that he was investing money from the National Furniture account in both their names. Brantley became aware of Alexander's and Mosley's ownership of National Furniture in September 1977.

From July 1977, when AYC began making payments to National Furniture, to February 1980, the month that AYC lost its Department of Children and Family Services contract, AYC paid National Furniture $74,341.73 for the leasing of furniture, equipment and an automobile. AYC had originally purchased these for $15,968.80. Throughout this period, AYC remained inadequately furnished and in great need of replacement furniture.

National Furniture deposited AYC's payments in its corporate bank account, in a bank account for Moments of Truth to which Mosley's Mother was a signator and in Mosley's law firm account. Moments of Truth received AYC checks totaling $7,316.66 and Mosley's law firm received a check in the amount of $416.66.

Out of the funds received, Mosley signed checks drawn on the National Furniture account to AYC in the amount of $5,525.40, to the Tennessee Department of Revenue in the amount of $980.28, to the Internal Revenue Service in the amount of $2,363.40, to Alexander in the amount of $1,000, to the VISA account of his law partner in the amount of $2,335.36, to Moments of Truth in the amount of $150, to West Side Unity Church, his mother's church, in the amount of $5,350, to Damon, Inc., a business owned and operated by Brantley, in the amount of $20,232.50, to Mosley & Assoc., an unidentified entity, in the amount of $9,105, to Mosley and Monroe, his law firm, in the amount of $1,597.50, to MCM Family Greeting, Inc., a company Mosley was trying to establish, in the amount of $5,000, to Mosley Legal Fees

in the amount of $1,500, and to himself in the amount of $690.

After a bench trial on the stipulated facts and exhibits, the district court found Mosley to be guilty as charged. The district court denied Mosley's post-trial motions and sentenced him to fourteen months' imprisonment on Count 2. The district court suspended sentencing on Count 1 and imposed a five year period of probation on that Count to run consecutively to the sentence on Count 1. As a condition of probation, the district court ordered Mosley to make restitution in the amount of $50,000.

*Issues*

Mosley raises two issues on appeal:

I. Whether the indictment was sufficient to inform Mosley of the charges against him; and,

II. Whether a fatal variance exists between the facts proved and the charges in the indictment?

I. *Whether the indictment was sufficient to inform Mosley of the charges against him?*

Mosley seeks to raise claims of multiplicity and duplicity of the indictment for the first time on appeal. A party waives a claim of multiplicity if he fails to raise it before trial. *United States v. Griffin*, 765 F.2d 677, 680–82 (7th Cir.1985). The courts require claims of duplicity to also be raised before trial. *United States v. Price*, 763 F.2d 640, 643 (4th Cir.1985); *United States v. Lyons*, 703 F.2d 815, 821 (5th Cir.1983); *United States v. Berardi*, 629 F.2d 723, 729 (2d Cir.), *cert. denied*, 449 U.S. 995, 101 S.Ct. 234, 66 L.Ed.2d 293 (1980); *United States v. Sheehy*, 541 F.2d 123, 130 (1st Cir.1976); *Mitchell v. United States*, 434 F.2d 230, 231 (9th Cir.1970), *cert. denied*, 402 U.S. 946, 91 S.Ct. 1636, 29 L.Ed.2d 115 (1971); *United States v. Costner*, 359 F.2d 969, 974 (6th Cir.1966); *Franklin v. United States*, 330 F.2d 205, 207 (D.C.Cir.1964); *United States v. Frank*, 290 F.2d 195, 196 (3d Cir.1961).

**1334**

Because Mosley failed to raise these claims at the proper time, he has waived them.

■ Mosley questioned the sufficiency of the indictment after the beginning of his trial. Unlike challenges for multiplicity and duplicity, a party may challenge an indictment for failure to charge an offense at any stage of the proceeding, including the appellate stage. *United States v. Esposito*, 771 F.2d 283, 288 (7th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1187, 88 L.Ed.2d 302 (1986). However, " 'an indictment not challenged before trial will be upheld "unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted." ' " *United States v. Gironda*, 758 F.2d 1201, 1210 (7th Cir.1985) (citations omitted).

In reviewing the sufficiency of an indictment, a court should consider the challenged count as a whole and should refrain from reading it in a hypertechnical manner.... As the Ninth Circuit stated ... an indictment "must be read to include facts which are necessarily implied by the allegations made therein.... Even if an essential averment in an indictment is faulty in form, if it may by fair construction be found within the text, it is sufficient."

With this construction in mind, a court must interpret an indictment to determine if it fulfills three functions. First, it should state all of the elements of the offense charged; second, it should inform the defendant of the nature of the charge so that he may prepare a defense; and third, it must enable the defendant to plead the judgment as a bar to any later prosecution for the same offense.

*Id.* at 1209 (citations omitted).

On appeal, Mosley challenges Count 2 of the indictment which charges, in pertinent part: .

2. On or about January 3, 1980, at Chicago, in the Northern District of Illinois, Eastern Division,

ROBERT L. BRANTLEY

and WILLIAM MOSLEY,

defendants herein, knowingly caused the following security, in the form of a check of a value of $5,000 or more, to be transported from Collierville, Tennessee to Chicago, Illinois, knowing that said check had been taken from Afro-Youth Community, Inc. by fraud:

Afro Youth Community, Inc.,

Check No. 192, payable

to NFEL, Inc., in the amount of $11,430.12

In violation of Title 18, United States Code, Section 2314.

December 1983 Grand Jury Indictment at 4, Record at 84. Paragraph one of Count 2 incorporates by reference all the allegations in Count 1 which sets forth the overt acts and charges an underlying conspiracy to defraud.

■ For the purpose of an indictment charging interstate transportation of fraudulently taken checks, section 2314 has two essential elements: "(1) interstate transportation of a stolen, converted, or fraudulently taken check of at least $5,000 value (2) with fraudulent intent." *United States v. Freeman*, 619 F.2d 1112, 1118 (5th Cir. 1980) (citations omitted), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981); *see* 18 U.S.C. § 2314. The instant indictment plainly sets forth both of these elements. The indictment also clearly informed Mosley of the nature of the charge against him and the judgment against him bars any future prosecution for the charged offenses. We therefore conclude that a reasonable construction of this indictment reveals the charge of which Mosley was convicted; in other words, we find the indictment to be sufficient.

Mosley would include the following as essential elements of the charged offense: (1) an unlawful scheme to defraud (2) through material failure to disclose (3) by one with a duty to disclose (4) who had a particular type of criminal intent and (5)

injury to AYC. Mosley is confusing his " 'constitutional right to know what offense is charged with his need to know the evidentiary details establishing the facts of such offense'...." *Freeman*, 619 F.2d at 1118. When an indictment contains all the essential elements of the charged offense, the accused may obtain the factual proof supporting the charges, if vital to his defense, by a motion for a bill of particulars. Fed.R.Crim.P. 7(f); *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir.1978), *cert. denied*, 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979); *Flying Eagle Publications, Inc. v. United States*, 273 F.2d 799, 802 (1st Cir.1960); *Cefalu v. United States*, 234 F.2d 522, 524 (10th Cir.1956); *McMullen v. United States*, 96 F.2d 574, 579 (D.C.Cir.1938).

II. *Whether a fatal variance exists between the facts proved and the charges in the indictment?*

■ Mosley commingles his fatal variance challenge with an assertion that the district court improperly amended the indictment. The two theories of error have some resemblance. However, "[a] judicial amendment of the indictment, whether implicit or explicit, is *per se* reversible error, ... while a variance in proof from the original indictment justifies reversal only when the defendant has been prejudiced." *United States v. Galiffa*, 734 F.2d 306, 311 (7th Cir.1984) (citations omitted); *see also United States v. Kuna*, 760 F.2d 813, 817 (7th Cir.1985). "[A]n amendment occurs when 'the offense proved at trial was not fully contained in the indictment, for trial evidence had "amended" the indictment by *broadening* the possible bases for conviction from that which appeared in the indictment.'" *Kuna*, 760 F.2d at 817–18 (quoting *United States v. Miller*, —— U.S. ——, 105 S.Ct. 1811, 1816, 85 L.Ed.2d 99 (1985)). This Court has found a constructive amendment

where a "complex set of facts" is presented to the jury during the trial which is distinctly different from the set of facts set forth in the charging instrument. *United States v. Muelbl*, 739 F.2d 1175, 1180–81 (7th Cir.1984). Alternatively, to find a constructive amendment the crime charged in the indictment must be "materially different or substantially altered at trial, [so that] it is impossible to know whether the grand jury would have indicted for the crime actually proved." *Id.*

*Kuna*, 760 F.2d at 818.

Mosley again attacks Count 2. He asserts that the trial court amended the indictment by adding what he perceives to be the essential elements of a section 2314 violation. As noted in Issue I, *supra* at pp. 1334–1335, Count 2 does set forth the essential elements of a section 2314 violation. Having reviewed the indictment, the stipulated facts, the trial exhibits and the trial transcript in the instant case, this Court finds that no "complex set of facts" existed in Mosley's trial which differed from the facts charged in Count 2 of the indictment. While the indictment does not charge a particular type of fraud by name, it does outline Mosley's relationship with AYC, the establishment of National Furniture by Mosley, the agreement between National Furniture and AYC upon Mosley's proposal, the profit reaped by National Furniture from the AYC agreement, Mosley's failure to disclose his interest in National Furniture to AYC, and the receipt of AYC funds by Mosley through National Furniture. The Government proved these at trial and we, as did the district judge, find them sufficient to establish fraud. Such a finding does not require reliance upon a complex set of facts distinctly different from those charged in the indictment.

"A variance occurs when the terms of the indictment are unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Galiffa*, 734 F.2d at 312 (citation omitted). "A variance between allegation and proof is not fatal unless the defendant has been thereby deprived of an adequate opportunity to prepare a defense or has been exposed to a risk of being prosecuted

twice for the same offense." *Kuna,* 760 F.2d at 819 (citations omitted).

Our review of the indictment, stipulated facts, exhibits and trial transcript shows that the Government proved the exact facts alleged in the indictment. Therefore, no variance exists. Mosley's argument really challenges the inferences that the district judge drew from the evidence in finding that Mosley intended to defraud AYC. In considering this claim, we review the evidence and all reasonable inferences that can be drawn from it in the light most favorable to the Government. *United States v. Moore,* 764 F.2d 476, 478 (7th Cir.1985) (citations omitted). In so doing, this Court finds that the district court reasonably inferred that Mosley intended to defraud AYC.

Mosley's final argument has no merit. In it, he asserts that the district court used an intangible rights theory of fraud to find intent at trial and an active concealment theory of fraud to deny Mosley's motion for a new trial. At trial, the district court stated: "... I would find an intent to defraud has been proven by the government based on the difference between the sale price and the leaseback price, *based on the active concealment by Mr. Mosley,* and based on the injury to AYC." Transcript at 84 (Apr. 23, 1984) (emphasis added). In denying Mosley's Motion for New Trial, the district court stated: "I don't think there is anything you can say, Mr. Gray, to persuade me that I can't take evidence of active concealment into account on the intent to defraud issue. I clearly can and did before, and I will now." Transcript at 50 (July 10, 1984). In each instance, the district court properly looked to the acts of concealment as one basis for finding intent to defraud. *United States v. O'Boyle,* 680 F.2d 34, 36 (6th Cir.1982) (citations omitted); *United States v. White,* 673 F.2d 299 (10th Cir.1982).

### Conclusion

Mosley's conviction is AFFIRMED.