**UNITED STATES of America, Plaintiff-Appellee,**

*v.*

**Jerry WHALEY, Defendant-Appellant.**

**No. 85–1017.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 12, 1986.

Decided Oct. 6, 1987.

Allan L. Yackey, Indianapolis, Ind., for defendant-appellant.

John A. Jancy, Asst. U.S. Atty., John Daniel Tinder, U.S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before CUMMINGS and FLAUM, Circuit Judges, and GRANT, Senior District Judge.[*]

GRANT, Senior District Judge.

Defendant-Appellant Jerry Whaley was indicted on one count of conspiracy to possess with intent to distribute pharmaceutical drugs. After the first trial concluded with a hung jury, the court declared a mistrial. The government filed a superseding indictment charging Whaley with six substantive acts of distribution or possession with intent to distribute controlled substances, in addition to the original conspiracy charge. The jury in the second trial found Whaley guilty on all charges. Whaley now appeals his conviction,[1] raising issues of the sufficiency of evidence of conspiracy and the vindictive nature of the superseding indictment. For the reasons stated below, we affirm the conviction.

## I

The investigation of the illegal diversion of pharmaceutical drugs from an Indianapolis pharmacy uncovered a conspiracy in which the appellant Jerry Whaley was involved. In 1981, the pharmacist-owner of Midtown Pharmacy, Sterling Litiskas, began selling pharmaceutical drugs (primarily the methamphetamine Desoxyn, also known as "speed" and "bird") illegally. One of his three major customers, Norma Jean Crabtree, distributed the drugs through her family members and sold them directly to the appellant. Whaley purchased drugs, in increasing quantities, from Crabtree and her family between 1982 and 1984 and sold them at parties, frequently with the Crabtrees, during that period.

On May 18, 1984, the grand jury returned an indictment against twenty defendants for drug-related offenses in connection with the illegal diversion of pharmaceutical drugs from the Midtown Pharmacy. Pharmacist Litiskas had previously entered into a preindictment plea agreement with the United States, and nineteen of the twenty indicted by the grand jury entered into pretrial plea agreements. Defendant Jerry Whaley, indicted on one count of conspiracy to possess with intent to distribute pharmaceutical drugs, went to trial on August 28, 1984.

Because the jury was unable to reach a verdict, the court declared a mistrial on September 4, 1984. The government filed a superseding indictment on September 27, 1984, that included the original conspiracy charge of the first indictment (a violation of 21 U.S.C. § 846), and added six substantive acts of distribution or possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1).[2] Whaley filed no motion challenging the superseding indictment prior to trial and raised no objection to the conspiracy charge or added counts at trial or at the close of the evidence.

Whaley's second jury trial commenced on November 13, 1984. Government witnesses testified to the defendant's purchases

* Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

1. Whaley timely filed an appeal on December 28, 1984. Although that appeal was dismissed on June 10, 1985, for failure to pay the docket fee, it was reinstated on March 23, 1986, by this Court after its initial determination that the defense counsel had violated Circuit Rule 2(c) concerning perfection of appeals. Thus, this matter is currently before this Court on direct appeal from the Judgment and Commitment Order dated December 20, 1984.

2. 21 U.S.C. § 841(a)(1): ... [I]t shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

21 U.S.C. § 846: Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

and sales of Desoxyn and other pharmaceutical drugs. Sterling Litiskas admitted that he himself was the source of most of the controlled substances in question, and other witnesses admitted to their personal involvement with Whaley in purchasing, distributing or taking the drugs. Norma Jean Crabtree and other members of her family stated that Whaley purchased Desoxyn and other drugs from them between 1982 and 1984. Daughter Vickie Crabtree testified that she was often present for Whaley's purchases, that she helped him prepare Desoxyn for sale, and both used and sold Desoxyn provided by Whaley. Other witnesses who obtained drugs from Whaley testified that the drugs were usually distributed for sale by Whaley, the Crabtree family and others from rented hotel rooms in Indianapolis. Specific incidents of distribution by Whaley formed the basis of counts two through six of the indictment; count seven alleged Whaley's purchase of twenty Desoxyn pills in January of 1984 from Norma Jean Crabtree after her release from prison.

The defendant's only two witnesses were his sister and mother, both of whom testified that they saw Jerry Whaley often, and that they had never seen him in possession of drugs.

The defendant was found guilty of all charges on November 19, 1984, and was sentenced to a term of imprisomnent of fifteen years on the conspiracy count; two years for each of the six substantive counts, to run concurrently; and concurrent special parole terms of two years on each of the substantive counts.

In this appeal, Whaley challenges the sufficiency of the evidence presented to support his conviction on the conspiracy count and seeks reversal of the convictions on counts two through seven on the basis of prosecutorial vindictiveness.

## II

Appellant first contends that the evidence presented at trial showed either no conspiracy or many tiny conspiracies, but was insufficient to support a finding of one overall conspiracy. According to Whaley, the record reflected that he would purchase pharmaceutical drugs from any source and would sell to any takers. He insists that there was no showing that he was a "major buyer" or that he had made agreements concerning distribution of controlled substances. He further asserts that, because the pharmacist Litiskas (the "hub" of the conspiracy) wanted nothing to do with him, Whaley could not have been a part of that conspiracy.

Appellate review of the sufficiency of the evidence to support a criminal conviction requires this court to determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Draiman,* 784 F.2d 248, 251 (7th Cir.1986).

This appellate court will not reconsider the evidence or assess the credibility of the witnesses.[3] *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Moore,* 764 F.2d 476, 478 (7th Cir.1985); *United States v. Redwine,* 715 F.2d 315, 319 (7th Cir.1983), *cert. denied,* 467 U.S. 1216, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984). We give deference to the trial jury's weighing of the evidence and its drawing of reasonable inferences. *United States v. Pritchard,* 745 F.2d 1112, 1122 (7th Cir.1984); *United States v.*

---

**3.** Whaley acknowledged that an appellate court does not reassess the credibility of trial witnesses, and yet asserted in this appeal that the jury convicted him because the government's witnesses were self-confessed drug abusers who gave perjured testimony. However, this court has recognized that agreements negotiated with the government do not increase the possibility of perjury to such an extent that the testimony is *per se* unreliable. *United States v. Peters,* 791

F.2d 1270, 1306 (7th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986); *United States v. Fallon,* 776 F.2d 727, 733–34 (7th Cir.1985). The existence of such agreements is one factor to weigh in determining credibility. "Frequently the principal witnesses in drug cases are turncoat former associates of the defendants, and their credibility is for the jury to determine." *United States v. Marks,* 816 F.2d 1207, 1209 (7th Cir.1987).

*Niemiec,* 611 F.2d 1207, 1211 (7th Cir. 1980). "Only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." *United States v. Moore,* 764 F.2d at 478 (quoting *Brandom v. United States,* 431 F.2d 1391, 1400 (7th Cir.1970), *cert. denied,* 400 U.S. 1022, 91 S.Ct. 586, 27 L.Ed.2d 634 (1971)). To succeed in his challenge of the sufficiency of the evidence, therefore, the appellant has a heavy burden. *United States v. Peters,* 791 F.2d 1270, 1290 (7th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986).

Jerry Whaley was charged with conspiring to distribute controlled substances in violation of 21 U.S.C. § 846. This court has defined a conspiracy as a "combination or confederation between two or more persons formed for the purpose of committing, by their joint efforts, a criminal act." *United States v. Herrera,* 757 F.2d 144, 149 (7th Cir.1985) (quoting *United States v. Mayo,* 721 F.2d 1084, 1088 (7th Cir.1983)). The nature of a conspiracy is such that its existence and the involvement of the co-conspirators in it must often be proved by circumstantial evidence. *United States v. Redwine,* 715 F.2d at 320. "The government need not establish that there existed a formal agreement to conspire; circumstantial evidence and reasonable inferences drawn therefrom concerning the relationship of the parties, their overt acts, and the totality of their conduct may serve as proof." *Id.,* citing *United States v. Kaczmarek,* 490 F.2d 1031, 1035 (7th Cir.1974); *United States v. Cogwell,* 486 F.2d 823 (7th Cir.1973), *cert. denied,* 416 U.S. 959, 94 S.Ct. 1975, 40 L.Ed.2d 310 (1974).

The government must prove that the defendant's relationship with other conspira- tors was more than a mere association. *United States v. Percival,* 756 F.2d 600, 610 (7th Cir.1985). It must present "evidence to support the inference that the defendant in some way joined and participated in the conspiratorial scheme." *United States v. Garcia,* 562 F.2d 411, 414 (7th Cir.1977).

■ Viewed in the light most favorable to the government, the evidence that Whaley was part of a conspiracy emanating from Midtown Pharmacy to distribute pharmaceutical drugs was overwhelming. The evidence showed that Litiskas's pharmacy in Indianapolis was the one source of controlled substances consistently used by the conspirators. It also revealed that the conspirators agreed, either explicitly or by their common conduct, to distribute primarily Desoxyn and some Preludin, and even standardized the price for the drugs. They followed the same method of distribution by renting rooms in hotels and motels from which their sales were conducted. And, after leaching out of each pill the methamphetamine desired by drug abusers, they routinely used yellow food coloring to create the appearance of an unused pill for resale.[4] These recurring patterns of illegal activity are strong circumstantial evidence of a conspiratorial agreement, and were certainly sufficient for a reasonable jury to conclude that they reflected the common purpose and plan of a conspiracy.

■ The evidence was also ample to show that the appellant, far from being a casual participant in this scheme, actively participated in it. "Once the Government proves the existence of a conspiracy, the Government need only offer 'slight evidence' to prove that an individual was a member of the conspiracy." *United States v. Castillo,* 814 F.2d 351, 353 (7th Cir.1987);

---

**4.** Desoxyn, manufactured by Abbott Laboratories, is an amphetamine legitimately used to treat obesity. The pills are yellow hard tablets. According to the government, a drug abuser of Desoxyn purchases the pills for seven to ten dollars apiece on the street (although pharmacists pay only twenty-five cents per pill). Usually the abuser will place several pills, which are porous, into a small amount of water. The active ingredient, methamphetamine, is water soluble but the tablet itself does not break down. The methamphetamine leaches out of the pill and can be drawn into a syringe and injected into the abuser's veins. The pills eventually become drained of all methamphetamine and become white. The abuser then can adulterate the hard tablet with yellow food coloring for resale, with no amphetamine, to an unsuspecting drug user.

*United States v. Gironda*, 758 F.2d 1201, 1217 (7th Cir.), *cert. denied*, 474 U.S. 1004, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985); *United States v. West*, 670 F.2d 675, 685 (7th Cir.), *cert. denied*, 457 U.S. 1124, 1139, 102 S.Ct. 2944, 2972, 73 L.Ed.2d 1340, 1359 (1982). The government presented testimony of six persons with whom the appellant distributed drugs and of another six persons to whom he made distributions. Both the pharmacist Litiskas and major dealer Crabtree testified against Whaley as to his involvement in their drug schemes. He purchased, used and resold the pharmaceutical drugs in ever-increasing amounts from Crabtree and others in the conspiracy, and even attempted to deal directly with Litiskas. He conducted drug-distributing parties in hotels. One witness testified that she helped Whaley prepare the pills. Whaley's overt acts, his long-term associations with the other members of the conspiracy, and his participation in their criminal schemes to distribute drugs were clear evidence that Whaley was a willing and knowledgeable participant in the conspiracy.

Proof of intent "to join and associate [oneself] with [the] criminal design and purpose" of a conspiracy, *see United States v. Herrera*, 757 F.2d at 149, and *United States v. Perry*, 747 F.2d 1165, 1169 (7th Cir.1984), does not require evidence of an overt agreement. Both the circumstantial evidence and reasonable inferences therefrom indicate a relationship of conspiracy between Whaley and the confessed conspirators. "Even without personal communication, tacit understanding of the usual business arrangements through a long course of conduct between the parties is enough to constitute an agreement." *United States v. Reynolds*, 801 F.2d 952, 954 (7th Cir.1986), citing *United States v. Consolidated Packaging Corp.*, 575 F.2d 117, 126 (7th Cir.1978). Furthermore, "one who buys from a conspirator for resale is a member of the conspiracy if he knows at least its general aims, see, e.g., *United States v. Andrus*, 775 F.2d 825, 853–54 (7th Cir.1985)." *United States v. Marks*, 816 F.2d 1207, 1212 (7th Cir.1987). Evidence of such conduct

by Whaley was fully provided by the government.

Whaley has responded that, if there was evidence of conspiracy, the evidence showed many small conspiracies rather than one. He further asserts that he, like the accused in *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), is only a "spoke" attached to the "hub," Crabtree and Litiskas, but that there is no "connecting rim" to prove a single rather than multiple conspiracies.

In determining whether a single or multiple conspiracies existed, the court must consider the scope of the agreement or goal. *See United States v. Bruun*, 809 F.2d 397, 405–06 (7th Cir.1987). In *Blumenthal v. United States*, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947), the Supreme Court determined that a single conspiracy existed when "[b]y their separate agreements, if such they were, [the conspirators] became parties to the larger common plan, joined together by their knowledge of its essential features and broad scope, though not of its exact limits, and by their common single goal." *Id.* at 558, 68 S.Ct. at 257. The standard followed by this Circuit for distinguishing between single and multiple conspiracies was first stated in *United States v. Varelli*, 407 F.2d 735 (7th Cir. 1969), *cert. denied*, 405 U.S. 1040, 92 S.Ct. 1311, 31 L.Ed.2d 581 (1972):

> Various people knowingly joining together in furtherance of a common design or purpose constitute a single conspiracy. While the conspiracy may have a small group of core conspirators, other parties who knowingly participate with these core conspirators and others to achieve a common goal may be members of an overall conspiracy.

*Id.* at 742. *See also United States v. Ramirez*, 796 F.2d 212, 215 (7th Cir.1986); *United States v. Percival*, 756 F.2d at 607.

■ A single conspiracy does require proof of mutual dependence. *See, e.g., United States v. Percival*, 756 F.2d at 607; *United States v. Dickey*, 736 F.2d 571, 582 (10th Cir.1984), *cert. denied*, 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985); *United States v. Abushi*, 682 F.2d 1289, 1295

(9th Cir.1982). However, that dependence need not be absolute; conspirators often sell in parallel strands rather than in links essential to one another. *United States v. Cerro,* 775 F.2d 908, 914 (7th Cir.1985). Their networks are often vertically integrated and loosely knit. *United States v. Panebianco,* 543 F.2d 447, 452 (2d Cir. 1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1128, 51 L.Ed.2d 553 (1977). As long as a common goal is being furthered, a person "can be part of a common enterprise without being indispensable to that enterprise; and a common enterprise for illegal ends is a conspiracy whose inessential as well as essential members are conspirators." *Cerro,* 775 F.2d at 914. The court must thus consider whether there is sufficient evidence of a hub and spokes with a connecting rim (the language of *Kotteakos,* 328 U.S. at 755, 66 S.Ct. at 1243), parallel but dependent strands, or vertically integrated networks with a common goal.

█ There was sufficient evidence presented at trial that Whaley knowingly assisted the core conspirators, and that they mutually relied upon one another in their common goal of distributing controlled substances. It is clear that Whaley, Litiskas, the Crabtree family, Danny and Kathy Polson, and others knew one another, dealt drugs to each other, planned their drug distribution "parties" together and sold drugs to the same groups of people. Whaley was an integral part of transactions that contributed to the success of the drug distributions. He knew that the source of the drugs was Midtown Pharmacy. He purchased the drugs from Norma Crabtree until she went to prison; from her son Darrell until he went to prison; from Danny Polson until he went to prison; from Kathy Polson until Norma Crabtree was released. Parties to an ongoing conspiracy that has a common objective are co-conspirators even if they join or terminate their relationship with the core conspirators at different times. *United States v. Noble,* 754 F.2d 1324, 1329 (7th Cir.), *cert. denied,* 474 U.S. 63, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985); *United States v. Varelli,* 407 F.2d at 742.

The government gave evidence of a common objective, the distribution of specific pharmaceutical drugs, coming from one source, Midtown Pharmacy, over a period of several years and involving the same group of dealers. After reviewing all the evidence in the light most favorable to the government, we conclude that a rational trier of fact could have found that there was a single conspiracy and that the appellant knowingly conspired to distribute pharmaceutical drugs in violation of 21 U.S.C. § 846.

### III

The second issue in this appeal is whether a superseding indictment, filed following a mistrial that resulted from a hung jury, with six substantive offenses added to the original conspiracy count, constitutes prosecutorial vindictiveness.

The facts are undisputed. At the conclusion of Jerry Whaley's trial on September 4, 1984, the jury deliberated but could not arrive at a verdict. The court *sua sponte* declared a mistrial. On September 27, 1984, the government filed a superseding indictment adding six substantive acts to the conspiracy charge. Whaley's second trial began on November 13, 1984, and concluded on November 19 with a jury finding of guilty of all charges. He now asserts that the increase in the government's charges following the mistrial was a vindictive prosecution that resulted in a violation of his constitutional due process right.

### A.

We must first consider the propriety of appellate review of this issue. Because prosecutorial vindictiveness was not raised prior to or during the trial, it is deemed waived on appeal unless cause is shown for granting relief from the waiver. *See* Fed. R.Crim.P. 12(b)(1), (f); *United States v. Covelli,* 738 F.2d 847, 862 (7th Cir.), *cert. denied,* 469 U.S. 867, 105 S.Ct. 211, 83 L.Ed.2d 141 (1984). It is generally held that a litigant cannot present to an appellate court an issue which he did not present to the trial court and which it, therefore, had no opportunity to decide. *Holleman v.*

*Duckworth*, 700 F.2d 391, 394–95 (7th Cir.), *cert. denied*, 464 U.S. 834, 104 S.Ct. 116, 78 L.Ed.2d 116 (1983). The exception to that rule is truly narrow and exists only when a jurisdictional question is raised or in "exceptional circumstances where justice demands more flexibility." *International Travelers Cheque Co. v. Bankamerica Corp.*, 660 F.2d 215, 225 (7th Cir.1981).

■ We find that, under the circumstances herein, exceptional circumstances exist which demand flexibility on our part. The prosecutor's addition of six substantive counts to the superseding indictment makes possible a punishment up to six times greater than the maximum fifteen-year/$25,000 sentence Whaley could have received from the single conspiracy count of the first indictment.[5] *See Lane v. Lord*, 815 F.2d 876, 878–79 (2d Cir.1987). This threat of a much greater criminal penalty is sufficient cause to warrant review by this court of the possibility of vindictive motive on the part of the prosecutor in the bringing of the reindictment.

Issues that have not been properly preserved for appeal must be reviewed under the strict standards of the plain error doctrine of Rule 52(b) of the Federal Rules of Criminal Procedure,[6] which allows appellate courts to correct only "particularly egregious errors," *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982), for the purpose of preventing a miscarriage of justice. *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985).

This court has established that plain error is an error resulting in "an actual miscarriage of justice, which implies the conviction of one who but for the error would have been acquitted." *United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir.

1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985). The reviewing court will examine only those contentions that are based on "newly raised questions of law, untainted by factual ambiguity." *United States v. McCabe*, 720 F.2d 951, 955 (7th Cir.1983). *See also United States v. Brantley*, 786 F.2d 1322, 1328 (7th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986), and *United States v. Gironda*, 758 F.2d 1201, 1216 (7th Cir.), *cert. denied*, 474 U.S. 1004, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985).

We have recognized an appellate court's discretion to resolve for the first time on appeal such issues as ineffective assistance of counsel (*United States v. Dyer*, 784 F.2d 812, 816 (7th Cir.1986)); indictments for failure to charge an offense (*United States v. Mosley*, 786 F.2d 1330, 1334 (7th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986); *United States v. Esposito*, 771 F.2d 283, 288 (7th Cir.1985), *cert. denied*, 475 U.S. 1011, 106 S.Ct. 1187, 89 L.Ed.2d 302 (1986); *United States v. Gironda*, 758 F.2d at 1210); and prosecutorial misconduct (*United States v. Lewis*, 797 F.2d 358, 369 (7th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1308, 94 L.Ed.2d 162 (1987)).

■ The issue of prosecutorial vindictiveness following a mistrial presently before us does present a newly-raised question of law free from factual ambiguity, and thus is properly before this court. (*See, e.g., United States v. Lewis*, 484 F.2d 734, 738 (7th Cir.), *cert. denied*, 414 U.S. 1070, 94 S.Ct. 582, 38 L.Ed.2d 476 (1973), which reached one contention but refused two others under the plain error doctrine.) Other appellate courts have considered the addition of charges in a superseding indictment after mistrial to be a possible viola-

---

5. The appellant was originally indicted under 21 U.S.C. § 846 for conspiracy to distribute drugs, the punishment for which is "imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the conspiracy." Under the superseding indictment, the appellant could receive a maximum punishment of a fifteen-year prison term, a $25,000 fine, or both for each of the six substantive counts. 21 U.S.C. § 841(b)(1)(A). The signifi-

cantly increased maximum penalties imposed under the 1984 amendment to section 841 do not affect this appellant, who was indicted prior to effective date of the amended provision.

6. Federal Rule of Criminal Procedure 52(b): *Plain Error.* Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

tion of a defendant's constitutional right of due process. *See, e.g., Lane v. Lord*, 815 F.2d 876 (2d Cir.1987); *United States v. Mays*, 738 F.2d 1188 (11th Cir.1984); *United States v. Krezdorn*, 718 F.2d 1360 (5th Cir.1983); *United States v. Motley*, 655 F.2d 186 (9th Cir.1981). Therefore, in the circumstances before us, we feel it proper to address the issue of vindictive prosecution, but only in the restricted manner mandated by the sparingly used plain error doctrine. *Young*, 470 U.S. at 15, 105 S.Ct. at 1046, quoting *Frady*, 456 U.S. at 163, n. 14, 102 S.Ct. at 1592, n. 14.

### B.

Due process of law requires that there be no vindictiveness against a defendant for having chosen to exercise such constitutional rights as an attack on his first conviction. *North Carolina v. Pearce*, 395 U.S. 711, 723–25, 89 S.Ct. 2072, 2079–80, 23 L.Ed.2d 656 (1969). Since *Pearce*, in a series of cases, the Supreme Court has interpreted and clarified the circumstances in which retaliatory use of prosecutorial power must not be tolerated.

A prosecutor's discretion to charge is very broad, *United States v. Goodwin*, 457 U.S. 368, 382, 102 S.Ct. 2485, 2493, 73 L.Ed.2d 74 (1982), and in some circumstances he may file additional or harsher charges against a defendant. The Supreme Court has made clear that "the Due Process Clause is not offended by *all* possibilities of increased punishment ... but only by those that pose a realistic likelihood of 'vindictiveness.'" *United States v. Goodwin*, 457 U.S. at 384, 102 S.Ct. at 2494 citing *Blackledge v. Perry*, 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974). *See also Wasman v. United States*, 468 U.S. 559, 568–69, 104 S.Ct. 3217, 3223, 82 L.Ed.2d 424 (1984).

Recognizing that the possibility of vindictive motivation is more likely in charging decisions made after a conviction rather than before trial, *Goodwin*, 457 U.S. at 381, 102 S.Ct. at 2492–93, the Supreme Court has held that a presumption of vindictiveness arises when a prosecutor brings a superseding indictment, increasing the charge, after a person has exercised his legal right to a trial *de novo*. *Blackledge v. Perry*, 417 U.S. at 27–28, 94 S.Ct. at 2102.

Although a prosecutor's decision to reindict a defendant following his successful post-conviction appeal is limited by the due process clause, his decision to lodge a superseding indictment prior to trial is less fettered. The Supreme Court has affirmed the prosecutor's broad discretionary power to bring increased charges after the "give and take" of plea negotiations has failed to induce a guilty plea.[7] *Goodwin*, 457 U.S. at 378, 102 S.Ct. at 2491; *Bordenkircher v. Hayes*, 434 U.S. 357, 362–63, 98 S.Ct. 663, 667–68, 54 L.Ed.2d 604 (1978). In the pretrial setting, therefore, a presumption of vindictiveness has generally been found not to apply. To prove vindictive prosecution at that stage, a defendant must establish that the enhanced charge or sentence was motivated by actual vindictiveness. *Wasman*, 468 U.S. at 568, 104 S.Ct. at 3223.

The Seventh Circuit has recognized that "vindictive prosecution has as its basis an increase in charges or a new prosecution allegedly brought in retaliation for the exercise of constitutional rights." *United States v. Jarrett*, 705 F.2d 198, 204 n. 8 (7th Cir.1983), *cert. denied*, 465 U.S. 1004, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984). No vindictiveness was found in a prosecutor's decision that was "based upon the normal factors ordinarily considered in determining what course to pursue, rather than upon genuine animus against the defendant for an improper reason or in retaliation for exercise of legal or constitutional rights." *United States v. DeMichael*, 692 F.2d 1059, 1062 (7th Cir.1982), *cert. denied*, 461 U.S. 907, 103 S.Ct. 1878, 76 L.Ed.2d 809 (1983).

---

7. Of course, probable cause for the added charges must exist, and the accused must be free to accept or reject the prosecutor's offer. *Goodwin*, 457 U.S. at 378, 102 S.Ct. at 2491; *Bordenkircher*, 434 U.S. at 363, 98 S.Ct. at 668.

Furthermore, the prosecutor's discretion to induce a guilty plea does not allow him to offer promises that are not kept. *Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

... [T]o establish a *prima facie* case of prosecutorial bad faith a defendant must "allege[ ] intentional purposeful discrimination and present[ ] facts sufficient to raise a reasonable doubt about the prosecutor's purpose ..." *United States v. Falk*, 479 F.2d 616, 620–21 (7th Cir.1973) (en banc); *United States v. Peskin*, 527 F.2d 71, 86 (7th Cir.1975), *cert. denied*, 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976). Absent such a showing, the presumption of good faith "remains undisturbed." *United States v. Niemiec*, 611 F.2d 1207, 1209 (7th Cir.1980).

*In re DeMonte*, 667 F.2d 590, 593 (7th Cir.1981).

This court has addressed the issue of vindictiveness in postconviction circumstances. *See United States v. Tucker*, 581 F.2d 602 (7th Cir.1978). However, it has not addressed the post-mistrial circumstances found in this case, a situation that seems to fall between the pretrial-postconviction dichotomy established by the Supreme Court. It is, therefore, our task to examine the effect of mistrial on the precedential analysis of vindictive prosecution.

### C.

A mistrial has been defined as "equivalent to no trial; ... a nugatory proceeding." 58 Am.Jur.2d *New Trial* § 1 (1971) at p. 183. It is certainly true that the essential element of a mistrial, its lack of finality, means that there is no legal determination in the case at bar. However, a mistrial has other legal consequences, for it is a premature, inconclusive end to a trial that was *in fact conducted*.[8] In the case before us, a new trial was held because the jury was unable to reach a verdict at the close of the first trial and the court itself declared a mistrial. Neither party requested the mistrial or objected to the court's decision. Following the government's determination to include substantive charges with the conspiracy charge, Whaley had seven weeks before his second trial in which to respond to those charges and to reconsider his trial tactics. In that period, he filed no motions challenging the enhanced charges; nor did he object to them at any point during the trial.

The issue of prosecutorial vindictiveness within the context of a mistrial is new to this court. However, the Second Circuit has well described the "neither fish nor fowl" quality of the period following a mistrial:

... [O]ne trial already having been had, the prosecution was certainly not in its incipient stages, and the alleged vindictiveness did not occur until after the first trial had ended with a hung jury. While such timing does not necessarily compel the conclusion that a change in the indictment was the product of vindictiveness, it does make that possibility more likely than would a change at a pre-trial stage before the prosecution has had a chance fully to assess the evidence.

*United States v. Khan*, 787 F.2d 28, 32 (2d Cir.1986).

■ The initial inquiry, when determining whether vindictive prosecution is present, is the cause of the mistrial. Courts have consistently held that no realistic likelihood of vindictiveness is found when a jury is deadlocked and both parties

---

**8.** It has long been settled that a new trial following declaration of a mistrial does not violate the double jeopardy clause as long as "there is a manifest necessity for the mistrial or the ends of public justice would otherwise be defeated." *United States v. Dinitz*, 424 U.S. 600, 607, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976). A mistrial that resulted from a deadlocked jury is a manifest necessity; thus "the Government had the right to obtain a superseding indictment anytime prior to the [defendant's] retrial." *United States v. Harris*, 542 F.2d 1283, 1314 (7th Cir.1976), *cert. denied*, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977). *See* Justice Story's opinion, *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824), which established the standards for double jeopardy. It accords with public policy as well as with logic that jeopardy does not terminate after a mistrial: both the government and the defendant are entitled to a resolution of the case by jury verdict, and society has an interest in giving the government one completed opportunity to convict those who have violated its laws. *See Richardson v. United States*, 468 U.S. 317, 326, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984); *Arizona v. Washington*, 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978). Such policy considerations are appropriate in the circumstances herein as well.

agree that a declaration of mistrial is a necessity.[9] *Khan,* 787 F.2d at 32–33. In those circumstances, the Second Circuit considered and dismissed the possibility that a prosecutor might conceivably have a vindictive attitude because he was "forced to do something over again that he thought he had done correctly the first time," *id.* at 32, or because the defendant had refused to plea bargain before the second trial, *id.* at 33. The Fifth Circuit, also examining for signs that a vindictive motive prompted a superseding indictment which added charges to the first indictment, held that, "[a]bsent evidence of actual retaliation, mere reindictment after a mistrial due to a hung jury is insufficient to demonstrate the realistic likelihood of prosecutorial vindictiveness to which *Pearce* and *Blackledge* apply." *United States v. Ruppel,* 666 F.2d 261, 267 (5th Cir.), *cert. denied,* 458 U.S. 1107, 102 S.Ct. 3487, 73 L.Ed.2d 1369 (1982). *See also United States v. Krezdorn,* 718 F.2d 1360, 1365 (5th Cir.1983) (en banc), *cert. denied,* 465 U.S. 1066, 104 S.Ct. 1416, 79 L.Ed.2d 742 (1984); *United States v. Thurnhuber,* 572 F.2d 1307, 1309–11 (9th Cir.1977).

The Second and Fifth Circuits have also adjudged that a prosecutor's right to add charges after a mistrial created no chilling effect on the defendant's freedom to exercise his legal rights; they found neither infringement of that freedom, *United States v. Ruppel,* 724 F.2d 507, 508 (5th Cir.1984) nor presumption of vindictiveness in those circumstances. *Lane v. Lord,* 815 F.2d 876, 879 (2d Cir.1987). In accord, the Eleventh Circuit held that a prosecutor's superseding indictment, increasing the charges against a defendant after a hung jury mistrial, "cannot be characterized as having arisen from any exercise of a protected right." *United States v. Mays,* 738 F.2d 1188, 1190 (11th Cir.1984). *See also United States v. Corona,* 804 F.2d 1568, 1570 (11th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1896, 95 L.Ed.2d 503 (1987). Specifically, courts have found no vindictiveness in superseding indictments that added a perjury count, *United States v. Lizza Industries,* 775 F.2d 492, 495–96 (2d Cir.1985), *cert. denied,* 475 U.S. 1082, 106 S.Ct. 1459, 89 L.Ed.2d 716 (1986), and a criminal conspiracy count. *Lane v. Lord,* 815 F.2d 876, 879 (2d Cir.1987).

■ In the case before us, the court declared a mistrial *sua sponte* due to the jury's inability to reach a verdict. Appellant Whaley took no action; he exercised no statutory or constitutional right, and cannot now claim that he was penalized for exercising such a right. The Supreme Court has made clear that the presumption of an improper vindictive motive arises only when "action detrimental to the defendant has been taken *after the exercise of a legal right*" and "only in cases in which a reasonable likelihood of vindictiveness exists." *United States v. Goodwin,* 457 U.S. at 373, 102 S.Ct. at 2488 (emphasis added). Nor did the appellant allege or demonstrate to this court that the indictment was filed in order to discourage him from exercising such a right. We therefore conclude that no presumption of vindictiveness has risen in the case before us.

■ This court also searched the record for evidence of actual retaliation and found nothing. To prove actual vindictiveness, there must be objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights. *See Goodwin,* 457 U.S. at 380–81, 384, 102 S.Ct. at 2492–93, 2494. Whaley did not allege, for example, that the prosecutor had a personal stake in the case or that he wanted to engage in "self-vindication"

---

**9.** Courts have found a presumption of prosecutorial vindictiveness in the filing of more severe charges after the defendant himself successfully moved for a mistrial over the government's objection. *See United States v. Motley,* 655 F.2d 186, 189 (9th Cir.1981). That presumption, if not dispelled by the government, constitutes a due process violation. *Id.* at 188. If the prosecutor proves to the satisfaction of the trial court that the increase in the severity of the charges after the mistrial did not result from any vindictive motive, he has met his burden and the presumption of vindictiveness is dispelled. *United States v. Gann,* 732 F.2d 714, 724 (9th Cir.), *cert. denied,* 469 U.S. 1034, 405 S.Ct. 505, 83 L.Ed.2d 397 (1984). Due process violations have also been found when no reasons for increased charges were given on the record. *United States v. Jamison,* 505 F.2d 407, 417 (D.C. Cir.1974).

against the appellant. *See Goodwin,* 457 U.S. at 383, 102 S.Ct. at 2494. Indeed, this court did not even find evidence that the additional charges were brought to persuade the defendant to plead guilty. In sum, we found no proof of actual vindictive motivation. We hold that neither the presumption of vindictiveness nor actual vindictiveness is present in this prosecutor's filing of a superseding indictment following the appellant's mistrial. Furthermore, absent any evidence of vindictiveness, we find no plain error. Accordingly, we affirm the conviction.

AFFIRMED.