10 March 2000

NO. 4-98-0597

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,    )   Appeal from

Plaintiff-Appellant,          )   Circuit Court of

v.                            )   Champaign County

STEVEN M. HALL,                         )   No. 96CF1291

Defendant-Appellee.           )

)   Honorable

)   John G. Townsend,

)   Judge Presiding.

_________________________________________________________________

JUSTICE McCULLOUGH delivered the opinion of the court:

The State appeals the order of the circuit court of Cham­paign County dismissing a felony charge of aggravated bat­tery (720 ILCS 5/12-4(b)(8) (West 1994)) brought against de­fen­dant Steven M. Hall.  The dismissal was entered on remand ordered by this court (
People v. Hall
, 291 Ill. App. 3d 1142, 716 N.E.2d 888 (1997) (unpublished order under Supreme Court Rule 23) (No. 4-97-

0111)) and was based on the trial court's find­ing that the State acted vin­dic­tive­ly in the filing of the felony charge.  On ap

peal, the State argues (1) the trial court did not apply the proper stan­dards in determining the State was actu­al­ly vindic­

tive; and (2) applying the proper standard, defen­dant did not meet the burden of establishing the State was actu­ally vindic

tive.  We agree and reverse.

Taken with the case was the State's motion to supple

ment the record on appeal and defendant's objection thereto.  The State seeks to supplement the record with two volumes of common law record in Champaign County case Nos. 96-DT-341 and 96-TR-

13731 and a partial report of proceedings of the hearing of Octo

ber 9, 1996, in case No. 96-DT-341.  In the original appeal, this court allowed the State's motion to supplement the record with these documents.  
People v. Hall
, No. 4-97-0111 (order of May 16, 1997).  In addition, the State moves to supplement the record in this appeal with a copy of the report of proceedings of the Feb

ruary 14, 1997, hearing in the trial court on defendant's motion to dismiss, which transcript was also before this court in the earlier appeal.  Accordingly, we allow the motion to supplement the record.

On July 14, 1996, defendant was arrested and charged by citation with driving a motor vehicle while having a blood-alco

hol concentration of 0.10 or more (625 ILCS 5/11-501(a)(1) (West 1996)) in No. 96-DT-341 (DUI) and im­prop­er lane usage (625 ILCS 5/11-709(a) (West 1996)) in No. 96-TR-13731.  The parties agree he was also arrested for a munic­ipal offense of bat­tery (Cham

paign Municipal Code §23-42).  Assistant State's Attorney Heath­er Prendergast was assigned to prosecute the causes against de­fen

dant, with the assistance of Daniel Kay, a Rule 711 student (145 Ill. 2d R. 711).  In a September 16, 1996, letter, the State offered to dis­miss the improper lane usage charge if the defen

dant would plead guilty to the DUI charge.  Defendant de­clined the of­fer and re­quested the matter proceed to trial.  On the morn­ing the case was set for tri­al, Octo­ber 9, 1996, Prendergast filed an in­for­ma­tion charg­ing defen­dant with DUI.

That same morn­ing, the State filed a motion for contin­

u­ance sup­ported by affi­davit, which stated as follows:  (1) at 10 p.m. the night before, the State dis­covered the breath test taken by defendant was not properly certi­fied, creat­ing an admissibil

ity problem for the State; (2) the State un­suc­cess­fully at­tempt­ed to con­tact an in­spec­tor with the Depart­ment of Public Health, who would be essential to laying a proper founda­tion for ad­mitting the breath test; and (3) the State had not sub­poenaed the in­spec

tor and had no reason to be­lieve he would be available to testify that day.  Defendant objected to the State's motion for continu­

ance.  Fol­low­ing a brief continuance for the State ­to con­duct addi­tional research on the issue of admissibil­ity, the trial court denied the State's mo­tion for con­tin­uance.  Immedi­ately thereafter, the State nol-prossed the DUI ­and im­proper lane usage charges.  

Later that same day, October 9, 1996, assistant State's Attorney Mick McAvoy filed the felony charge of ag­gra­vated battery against de­fen­dant.  De­fen­dant moved to dismiss the charge, as­sert­ing vindictive pros­ecu­tion.  

In his mo­tion, defen­dant al­leged that, on the morning of October 9, 1996, prior to and dur­ing the pro­ceed­ings on the State's mo­tion for con­tinu­ance, McAvoy was pres­ent in the court­

room and en­gaged in a heat­ed dis­cussion with defense coun­sel regard­ing defense counsel's failure to notify the State of the defect in the State's evi­dence, of which McAvoy asserted defense counsel was aware.  De­fen­dant further al­leged that the State dismissed the charges over defendant's objection.  According to defendant, his insistence on his right to pro­ceed to trial and his ­suc­cess­ful re­sistance of the State's mo­tion for con­tinu­ance left the State no choice but to dis­miss the DUI charge.  In con­

clu­sion, de­fen­dant al­leged that the cul­mi­na­tion of these events led McAvoy to charge defen­dant with ag­gra­vat­ed bat­tery "in re­tal­

i­a­tion" and "out of prose­cu­tori­al vin­dic­tive­ness," vio­lating defen­dant's due pro­cess rights.

On February 14, 1997, at the hearing on the defendant's mo­tion to dis­miss, Prendergast testified that, in a conversa­tion with defense counsel, she was alerted to the pos­sibility of a prob­lem with the State's evidence.  In the course of pre­par­ing for trial the eve­ning of Octo­ber 8, 1996, she dis­cov­ered the problem allud­ed to by defense coun­sel, the improp­er certifi­cation of defendant's breath test.  On the morn­ing of tri­al, Octo­ber 9, 1996, she filed an in­for­ma­tion charging defen­dant with DUI and then filed a motion for continu­ance, which motion was denied.  Prendergast was present in the courtroom when a discussion took place between McAvoy and defense counsel.  McAvoy did not raise his voice and did not appear upset.  Defense counsel then asked Prendergast, "do you recall me advising him during that discus

sion, if he was handling the case that he should talk to me about it, otherwise shut up?"  Her answer was she did not remember but agreed it was "something similar to that."  After the trial court denied the State's motion for con­tinuance, Prendergast made a mo­

tion to dis­miss the DUI charge.  The motion was granted over defendant's ob­jec­tion.  Prendergast had no role in fil­ing the felony aggravat­ed bat­tery information, which was filed by McAvoy.  She had no knowledge of when it was filed, and McAvoy ­did not discuss that charge with her.

McAvoy testified he had no official re­sponsibility in the case against defendant­.  He be­came aware of the potential prob­lem with the DUI case against de­fen­dant when Prendergast and ­Kay tele­phoned him on Octo­ber 8, 1996, the night be­fore the tri­

al.  He first un­der­stood the prob­lem with the admis­sibil­ity of the breath test re­sults at about 10 that night.  He met with police officers that night, became aware of the battery offense al­legedly com­mitted by defendant, and determined to file felo­ny charg­es against defendant.  He did not recall whether he in­formed Prendergast of his intent to file the aggravated bat­tery charge and testified he did not give notice to de­fen­dant or his coun­sel of his intent to file the charg­e.  His decision to file the ag­

gra­vated bat­tery charge had noth­ing to do with his discussion with de­fense coun­sel or with defendant's persistence in assert­ing his right to trial on the traffic offense.

Thereafter, the trial court grant­ed defendant's mo­tion to dis­miss, finding the State's conduct to be presumptively vin­

dic­tive.  Relying on 
People v. Walker
, 84 Ill. 2d 512, 419 N.E.2d 1167 (1981), the trial court found the State failed to iden­tify objective facts sufficient to justify the decision to en­hance the battery charge against defendant.  The State ap­pealed, argu­ing 
inter
 
alia
 that 
United States v. Goodwin
, 457 U.S. 368, 73 L. Ed. 2d 74, 102 S. Ct. 2485 (1982), dictated the trial court erred in find­ing a presumption of vindictiveness applied in the present case.  

On ap­peal, this court re­versed, rul­ing that the trial court erred in find­ing the fil­ing of the aggra­vated battery charge was pre­sump­tively vindic­tive and re­manded for a determi­

nation of actual vindic­tiveness.  
People v. Hall
, No. 4-97-0111, slip order at 3 (Sep­tember 12, 1997) (un­pub­lished or­der pursuant to Supreme Court Rule 23).  Re­manding the cause for a determina

tion of actual vindictiveness, we cited 
Goodwin
, which stated when a presumption of vindictive­ness is not war­rant­ed "'a de­fen­

dant in an ap­pro­pri­ate case might 
prove
 
ob­jec­tive­ly
 that the prosecutor's charg­ing deci­sion was motivated by a desire to pun­

ish him for doing some­thing that the law plain­ly allowed him to do.'  (Emphasis added.)"  
Hall
, slip order at 8-9, 
quoting 
Goodwin
, 457 U.S. at 384, 73 L. Ed. 2d at 87, 102 S. Ct. at 2494.  This court specifically found that, on the evidence before the trial court, no inference arose that the prosecutor acted with vindictiveness in charging defendant with aggravated battery.  
Hall
, slip order at 8.  The trial court was directed to make a de­ter­mina­tion of whether actu­al vin­dic­tive­ness was shown based on objec­tive proof, not­ing that the trial court should not apply a pre­sump­tion of vindic­tive­ness, which would impose the ini­tial bur­den of proof on the State.

Following remand, the trial court conducted a further hearing on May 5, 1998.  The trial court took judicial notice of the underlying proceedings in Nos. 96-DT-341 and 96-TR-13731 and the proceedings in the February 14, 1997, hearing.  Daniel Kay, who did not testify at the first hearing, tes­ti­fied that on Octo

ber 8, 1996, he was employed in the State's Attorney's office in the capacity of a Rule 711 student, and on that date he was working on the DUI case with Prendergast, who had the primary respon

sibility.  Kay became aware of the evi­den­tiary prob­lem some­time be­tween 7 and 9:30 that eve­ning.  In answer to defendant's coun

sel's question concerning problems with the chemical test re

sults, Kay stated, "I recall specific conversations, not with me, however I believe it was with you, over the phone, where you gave a cryptic response as to why you were going to go forward with the case and we anticipated it was going to be a plea."  Kay stated he was inexperienced with the steps to go through as to foundation requirements for evidence and was not familiar with how much experience Prendergast had, but that McAvoy "was the most experienced and he was offering assistance in that regard."  McAvoy was working in his own office upstairs, but would come back down and was with them intermittently throughout that eve

ning.  "It seemed that Mick simply--simply appeared and he was--

he was good like that, actually.  He was always willing to offer advice and help, help out."  "The best way to characterize it is a big brother was offering guidance."  Kay was not aware of any dis­cus­sions that night re­garding the fil­ing of felo­ny charges against defen­dant.  Kay was present throughout the evening and he was not involved in any meeting in which mem­bers of the police department were present.  He did not participate in any inter

views of police officers in this case.  It was possible a meeting was conducted and he did not participate.  On the morning of October 9, 1996, prior to the commencement of defendant's trial, Kay and Prendergast "assumed" their positions at the counsel table and McAvoy "assumed a position back in the gallery area."  According to Kay, there was discussion in which the three of them inquired of defense counsel "why are you doing this to us," 
i.e.
, al­lowing the case to pro­ceed to trial without in­form­ing the State of the evi­den­tiary de­fect.  Kay de­scribed the ex­change "as kind of like you see with in a bar fight, when two people are getting ready to square off at each other."  Thereaf­ter, defense counsel, as he was leaning, pointed his finger at McAvoy, who was still seated in the gallery, telling him if "it wasn't his case, for him to butt out and shut up."  Following this exchange, court con­vened, the State's mo­tion for con­tin­uance was denied, and the State nol-prossed the charges.  Short­ly there­af­ter, McAvoy indi

cated to Kay that it was not over yet and he was going to look into filing felony charges. 

The trial court again grant­ed defendant's motion to dis­miss, finding the objec­tive facts pre­sented ­"persuade that the felony filing was vindictive," 
i.e.
, the State's filing of the additional felony charge of aggravated battery was to punish defen­dant for securing dis­missal of the traffic charges.  This appeal followed.

Vindictive prosecution claims present questions of both law and fact.  We therefore review the trial court's legal con­

clu­sions 
de
 
novo
, but we will not upset the trial court's find­

ings of fact unless clearly erro­ne­ous.  
United States v. Spears
, 159 F.3d 1081, 1086 (7th Cir. 1998).  

"Due process of law requires that there be no vindictiveness against a defendant for having chosen to exercise such constitutional rights as an attack on his first conviction.  
North Carolina v. Pearce
, 395 U.S. 711, 723-

25, 89 S. Ct. 2072, 2079-80, 23 L. Ed. 2d 656 (1969).  Since 
Pearce
, in a series of cases, the Supreme Court has interpreted and clari

fied the circumstances in which retaliatory use of prosecutorial power must not be toler

ated."  
United States v. Whaley
, 830 F.2d 1469, 1477 (7th Cir. 1987).

­­
One pur­pose of in­sti­tuting crimi­nal pro­ceedings against an indi­vidual is to pun­ish; there­fore, the presence of a puni­tive motiva­tion behind prosecu­torial action does not render such ac­

tion constitu­tional­ly viola­tive.  
Goodwin
, 457 U.S. at 372-73, 73 L. Ed. 2d at 80, 102 S. Ct. at 2488.  A prosecutor's dis­cretion to charge is broad, and in some circumstances the prosecutor may file addi­tional and harsher charges against a defendant.  
Whaley
, 830 F.2d at 1477.  In general terms, a pros­ecu­tion is vin­dic­tive and viola­tes due pro­cess if un­der­tak­en "[t]o punish a per­son because he has done what the law plainly allows him to do."  
Goodwin
, 457 U.S. at 372, 73 L. Ed. 2d at 80, 102 S. Ct. at 2488.  Such a violation is remedied through dis­miss­al of the crim­i­nal charges brought against defen­dant.  
People v. Flanagan
, 201 Ill. App. 3d 1071, 1078, 559 N.E.2d 1105, 1110 (1990).  However, "'the Due Process Clause is not offended by 
all
 possibilities of in

creased punishment *** but only by those that pose a realistic likelihood of "vindictiveness."'" (Emphasis added.)  
Goodwin
, 457 U.S. at 384, 73 L. Ed. 2d at 87, 102 S. Ct. at 2494, quoting 
Blackledge v. Perry
, 417 U.S. 21, 27, 40 L. Ed. 2d 628, 634, 94 S. Ct. 2098, 2102 (1974). 

The possibility of vindictive motiva­tion is more likely in charging decisions made after defendant exercises rights chal

lenging his conviction rather than before trial.  
Goodwin
, 457 U.S. at 381, 73 L. Ed. 2d at 85, 102 S. Ct. at 2492-93.  Thus, the Su­preme Court has held a pre­sump­tion of pros­e­cu­to­ri­al vin­dic­

tive­ness is war­ranted where a prose­cutor brings addi­tional charg­

es and more serious charges against defen­dant 
after
 defendant has been convict­ed of an of­fense and has over­turned his con­viction, there­by subjecting a defendant to greater sanc­tions for pursuing a statu­tory or con­stitutional right.  See 
Blackledge
, 417 U.S. at 27-29, 40 L. Ed. 2d at 634-35, 94 S. Ct. at 2102-03.  In con

trast, ­­­no such presump­tion adheres in the pre­trial set­ting, 
where the pros­ecu­tor has broad dis­cre­tion in charging a de­fen­dant.  See 
Goodwin
, 457 U.S. at 382-84, 73 L. Ed. 2d at 86-87, 102 S. Ct. at 2493-94.   ­­­­When the pre­sump­tion is not ap­plica­ble "a de­fen­dant in an appro­priate case might 
prove
 
objec­tive­ly
 that the prosecutor's charg­ing deci­sion was motivated by a desire to pun­ish him for doing something that the law plain­ly allowed him to do."  (Empha­

sis added.)  
Goodwin
, 457 U.S. at 384, 73 L. Ed. 2d at 87, 102 S. Ct. at 2494.  ­­­Our re­mand order instructed the trial court to make a deter­mina­tion as to whether actu­al vin­dictiveness was shown based on objective proof, without any presump­tion of vin­dictive

ness in this pretrial set­ting.  

The State contends that the trial court did not apply the proper stan­dards on re­mand in determining that it was actu­al­

ly vindic­tive.  Specifically, the State alleges that the trial court mis­un­der­stood the ques­tion pre­sented on remand and erred in de­ter­min­ing that a rea­son­able person viewing the evidence would find it was ­more like­ly than not that the charge was vindic­tively filed based on ob­jective proof.  The State concludes the proper inquiry should have been whether actu­al vin­dic­tive­ness was pres­

ent tak­ing into con­sid­er­ation the prosecutor's testi­mony as to the rea­sons for filing the charge. 

The trial court made a determination that actu­al vin­

dictiveness was shown.  It found ­­the State's filing of the addi

tional charge was to punish defen­dant for securing dis­missal of the traffic charges.  While the trial court used language about what a reasonable person would conclude, it also stated the facts presented "persuade that the felony filing was vindictive."  T­he issue is not wheth­er the prop­er query or de­ter­mi­nation was made, but ­whether the proper stan­dard of proof was used by the trial court in reach­ing its de­ter­mina­tion of actual vin­dic­tive­ness.

No authoritative Illi­nois Ap­pellate or Supreme Court opinions guid­e us in assessing a claim of actual prosecu­to­rial vin­dic­tive­ness.  The sev­enth cir­cuit has determined that, to es­

tab­lish a claim of actu­al pros­e­cu­to­ri­al vin­dic­tive­ness, a de­fen­

dant not only must pro­duce (1) ob­jec­tive evi­dence the prose­cutor had some animus or retal­ia­tory mo­tive, but also must pro­duce (2) objec­tive evidence that tends to show the prosecu­tion would not have oc­curred ab­sent that motive.  
United States v. Benson
, 941 F.2d 598, 612 (7th Cir. 1991); 
Unit­ed States v. Cyprian
, 23 F.3d 1189, 1196 (7th Cir. 1994).  Once de­fen­dant suc­cess­ful­ly es­tab­

lish­es actual vindic­tiveness, the pros­e­cu­tion must come for­ward with objec­tive evidence of a legiti­mate moti­va­tion for fil­ing the charge.  See 
Unit­ed States v. Bullis
, 77 F.3d 1553, 1559 (7th Cir. 1996); see also 
Unit­ed States v. Contreras
, 108 F.3d 1255, 1262-63 (10th Cir. 1997) 
(requiring State to jus­tify its deci­sion with le­giti­mate, 
articulable, ob­jective rea­sons).  

"Burden of proof" in the con­text of crim­i­nal law de

fenses may be intended to refer to any one of at least three distinct evidentiary burdens:  the burden of plead­ing, the burden of production, and the burden of persua­sion.  1 P. Robin­son, Criminal Law Defenses §3, at 12 (1984) (hereinafter Criminal Defenses).  The bur­den of plead­ing, not at issue in this case, sim­ply refers to the burden of in­tro­duc­ing or rais­ing the de­fense for con­sid­er­ation.  1 Criminal Defenses §3, at 13.  The burden of produc­tion serves to exclude legal issues not suf­fi­ciently sup­

ported by evidence from consid­eration by the trier of fact.  The party bear­ing the bur­den of pro­duc­tion must ad­duce suf­ficient evidence to sup­port or ne­gate, as the case may be, the asserted defense.  Generally, the party benefitting from having the issue presented to the trier of fact must bear the burden of production on that issue.  1 Crim­inal Defenses §3, at 15.  The bur­den of per­sua­sion de­scribes the degree to which a trier of fact must be per­suaded to decide an issue in favor of the bur­dened par­ty.  1 Criminal Defenses §3, at 16.   

We hold that de­fen­dant bears the bur­den of pro­duc­tion and per­sua­sion in seek­ing to prove a claim of actu­al pros­e­cu­tori­al vin­dic­tive­ness, which means a de­fen­dant not only must pro­duce ob­jec­tive evi­dence that the prose­cutor had some animus or retal­

ia­tory mo­tive, but also must pro­duce objec­tive evidence that tends to show the prosecu­tion would not have oc­curred ab­sent that motive.  
Benson
, 941 F.2d at 612; 
Cyprian
, 23 F.3d at 1196.  Once this show­ing is made, the pros­e­cu­tion must come for­ward with ob­

jec­tive evi­dence of a legit­i­mate moti­va­tion for fil­ing addi­tional or more serious charges.  

The allo­ca­tion of both the burden of prod­uction and per­sua­sion to the defen­dant in this context is con­sis­tent with the Su­preme Court's ob­ser­va­tion in 
Goodwin
.  The Supreme Court ac­knowl­edged in 
Goodwin
 that the defendant's bur­den in prov­ing a claim of actual vindic­tive­ness is onerous, citing with ap­proval the obser­va­tion of the govern­ment in its brief, which stated:

"'Accordingly, while the prosecutor's charg­

ing deci­sion is presumptively lawful, and the pros­e­cu­tor is not re­quired to sus­tain any bur­den of justi­fi­ca­tion for an increase in charges, the defen­dant is free to tender evidence to the court to support a claim that enhanced charges are a direct and unjusti­fi­

able penalty for the exercise of a proce­dural right.  Of course, only in a rare case would a de­fen­dant be able to over­come the presump­

tive validity of the pros­ecutor's ac­tions through such a demonstra­tion.'"  
Goodwin
, 457 U.S. at 384 n.19, 73 L. Ed. 2d at 87 n.19, 102 S. Ct. at 2494 n.19. 

Here, the trial court stated that its finding of vindictiveness was reached "with the burden on defendant" to prove objectively the claim asserted.

The State argues that defen­dant did not meet his heavy burden of establishing that the State was actu­ally vindic­tive.  In addition, the State ar­gues that the trial court did not spe

cifically iden­ti­fy evi­dence of prosecu­torial ani­mus or retalia­

tory mo­tive and failed to find that defen­dant would not have been prosecut­ed ab­sent such animus.

A claim of prosecutorial vindictive­ness turns on the facts of each case. 

The trial court found a heated argument occurred; McAvoy did not give notice to Prendergast and Kay of his intent to file felony charges on the evening of October 8, 1996; an opportunity to file the felony information existed when the DUI information was filed; no meeting with police officers occurred on October 8; McAvoy had no assigned responsibility for prosecu

tion of defendant until he determined to file the felony charges; he did not tell Prendergast or Kay that he was filing the felony charge before doing so; and following dismissal of the traffic charge, McAvoy told Kay the case was not over yet.

We disagree with the trial court's finding that defen

dant secured the dismissal of the DUI charge.  What the defendant did was to give the appearance that he was going to object to the admission of the breath test report.  This never occurred.  At the most, the defendant exercised the right of objecting to a continuance requested by the State.  The trial court denied the continuance, and the State moved to nol-pros the traffic charges.  The record suggests, contrary to the trial court's finding, that the defendant objected to the 
nolle
 
prosequi
 motion.

In finding vindictiveness on the part of the prosecu

tion, the court should not consider the obnoxious behavior of one or both of the attorneys who represent the real parties in inter

est, the defendant and the People of the State of Illinois.

The proceedings for which defendant claimed a due pro

cess violation were 
pretrial
 proceedings.  This was not a case where defendant had proceeded to trial.  The trial court found that the filing of the aggravated battery charge "was to punish the defendant for securing a dismissal of the traffic charge[s]."  The defendant did not move for a dismissal nor did he secure a dismissal of the traffic charges.  A statement in discussion with the prosecutor to the effect that he would object to the breath test report if the State sought to admit it into evidence is not the giving up of a right.

In 
Whaley
, the first trial concluded with a hung jury and the trial court declared a mistrial.  Defendant had been indicted on one count of conspiracy to possess with intent to distribute drugs.  After the mistrial, the government filed a superseding indictment charging six acts in addition to the orig

inal charge.  
Whaley
, 830 F.2d at 1471.

In 
Bordenkircher v. Hayes
, 434 U.S. 357, 363-65, 54 L. Ed. 2d 604, 610-12, 98 S. Ct. 663, 668-69 (1978), the Court held that additional charges may be used to induce a defendant to plead guilty.  "Once that conclusion was accepted, it necessarily followed that it did not matter whether the 'additional' charges were obtained in the original indictment or merely threatened in plea negotiations and obtained once those negotiations broke down."  
Goodwin
, 457 U.S. at 379 n.10, 73 L. Ed. 2d at 84 n.10, 102 S. Ct. at 2491 n.10.

The 
Goodwin
 court stated: 

"[J]ust as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded."  
Goodwin
, 457 U.S. at 380, 73 L. Ed. 2d at 85, 102 S. Ct. at 2492.

Bordenkircher
 concerned plea negotiations, the break

down of the negotiations, and the prosecutor carrying out his threat to have defendant indicted on more serious charges if he did not plead guilty to the offense with which he was originally charged.  The instant case does not involve a plea negotiation.  We note that the municipal battery charge remained pending throughout the proceedings in the traffic cases and the subject of the battery was not injected into the negotiations concerning the traffic offenses by the State or defendant.  Defendant had no legitimate expectation that the battery charge would be dismissed or would not be enhanced to aggravated battery.

Although defendant argues that he was penalized for exercising a right, the record simply shows a 
nolle
 
prosequi
 of the DUI charges.  At the most, the record shows that defendant had made it clear that, in the event trial proceeded on the DUI charge, he would object to certain evidence.  The only motive shown by this evidence is an animated conversation by defense counsel attempting to inject McAvoy into the proceeding or to insist that he "butt out."  This evidence is insufficient to sustain the trial court's decision finding vindictiveness.  How

ever, the trial court was correct in stating that giving the impression to Kay that the atmosphere was akin to a bar fight does not promote the reputation of lawyers and that "[e]very member of the legal profession has an obligation to conduct him

self or herself appropriately."

The order of the circuit court of Champaign County is reversed, and this case is remanded for further proceedings.

Reversed and remanded.

STEIGMANN, J., concurs.

KNECHT, J., dissents.

JUSTICE KNECHT, dissenting:  

I respectfully dissent.  The same trial judge has now twice concluded prosecutorial vindictiveness occurred in this case.  At the heart of the trial court's ruling is the conclusion assistant State's Attorney (ASA) McAvoy lied about why the felony charge was filed.

The objective circumstances surrounding the prosecu

tor's decision to increase charges against defendant were suc

cinctly summarized by the trial court as follows.

ASA McAvoy, who filed the information charging defen

dant with aggravated battery, had a heated argument with defense counsel shortly before the filing of the felony charge.  Although ASA McAvoy spent the entire evening the day before the filing with ASA Prendergast and Kay, who were assigned to and responsi

ble for prosecuting the traffic matter, ASA McAvoy did not men

tion to them his intent to file felony charges on the night be

fore the trial date.  On the day of the DUI trial, an opportunity to file a felony aggravated battery charge existed when the DUI information was filed, but none was filed and no mention was made of that possibility.

In contradiction to ASA McAvoy's testimony, 
no
 
meeting
 regarding defendant's conduct occurred with police officers and any of the ASAs the night before the DUI trial.  ASA McAvoy had no assigned responsibility for prosecution of the defendant until he determined to file the felony charge.  ASA McAvoy gave no notice to ASA Prendergast and Kay that he was filing a felony charge prior to doing so.  Following dismissal of the traffic charge, ASA McAvoy commented to Kay that the case was not over yet and he would look into filing felony charges.  The trial court's findings of fact are not clearly erroneous and we should not substitute our judgment for the trial court's on these criti

cal points.  I do not suggest a senior prosecutor is obligated or likely to discuss his filing intentions with junior prosecutors, but in the unique circumstances of this case, the trial court was entitled to give that failure evidentiary significance.  I be

lieve defendant presented objective evidence establishing prose

cutorial animus and the additional charge would not have been filed absent such animus.

ASA McAvoy testified the impetus to his filing of the felony charge was a meeting he attended with ASAs Prendergast and Kay and members of the police department, 
and the sharing of information that occurred at that meeting
.  However, the trial court concluded no such meeting occurred.  The trial court did not find ASA McAvoy's testimony believable.  In effect, the trial court concluded ASA McAvoy lied about the meeting.  The very meeting ASA McAvoy contended was the impetus for his filing decision did not even occur.  This conclusion coupled with the other findings are more than sufficient to sustain the trial court's decision.  

The majority contends defendant did not secure a dis

missal of the traffic charge.  The defendant's objection to a continuance and his likelihood of success on resisting the admis

sibility of the breathalyzer test prompted the State to dismiss the DUI charge.  This is the equivalent of securing a dismissal.  ASA McAvoy retaliated by filing a felony battery charge.  The State did not present any evidence this was simply a routine review and enhancement of a municipal battery charge or that a three-month delay in filing such a charge was typical.  The only rebuttal to the defendant's evidence was the testimony of ASA McAvoy, which the trial court found less than credible.

I would affirm.